**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Blair Reed (SBN 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
          breed@bursor.com

**THE MARLBOROUGH LAW FIRM, P.C.**
Christopher Marlborough (SBN 298219)
445 Broad Hollow Road, Suite 400
Melville, New York 11747
Telephone: (212) 991-8960
Facsimile: (212) 991-8952
Email**:** chris@marlboroughlawfirm.com

*Counsel for Plaintiff*

*(Additional counsel appears on signature page)*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON WILLIS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>       v.<br><br>COLGATE-PALMOLIVE CO.<br><br>                    Defendant. | Case No.  2:19-cv-8542<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sharon Willis ("Plaintiff"), by her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF ACTION

1.      Colgate-Palmolive Co. ("Defendant") has made millions of dollars selling Colgate Optic White toothpaste ("Optic White") based on false hope.  Since 2010, sales of whitening toothpaste have been over $2 billion a year and are continuing to grow.  Colgate knows that whitening toothpaste is the number one sought after type of toothpaste.  To capitalize on consumer demand for whitening toothpaste, Colgate makes false and misleading representations about Optic White toothpaste to sell Optic White at a premium price.

2.      Since October 2013, Colgate has falsely represented that Optic White toothpaste "Goes Beyond Surface Stain Removal to Deeply Whiten" teeth.  Since February 2014, Colgate has falsely represented that Optic White Platinum toothpaste "Deeply Whitens More Than 3 Shades."  Both products contain the same supposed whitening ingredient, 1% hydrogen peroxide.

3.      The 1% hydrogen peroxide in Optic White does not go beyond surface stain removal, and does not deeply whiten teeth because there is not enough hydrogen peroxide in toothpaste, and the peroxide is not in contact with teeth for long enough.  As Colgate's former Vice President for Clinical Research (and its current Chief Dental Officer) has admitted, with respect to removal of intrinsic stains on teeth:

> Toothpastes with hydrogen peroxide for whitening don't really help much.  Because the toothpaste gets all over your mouth, including your gums, and because you might swallow some, the amount of hydrogen peroxide is small.  In addition, you probably won't brush long enough for the hydrogen peroxide to have much of an effect.
>
> -   Dr. William DiVizio, DMD, Colgate Vice President for Oral Care Research and Development

CLASS ACTION COMPLAINT                                                                  1

4.     Based on Colgate's false and misleading "Deeply Whiten(s)" claims, Plaintiff Sharon Willis, and the Class Members she seeks to represent, bought Optic White at a premium price.  Because Plaintiff and others like her were taken in by Colgate's false promise of deep whitening, Plaintiff brings this class action against Colgate to seek a reimbursement of the premium Plaintiff and the Class Members paid based on Colgate's representations that Optic White "Deeply Whiten(s)" teeth.

5.     As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Plaintiff and the Class Members purchased Optic White toothpaste.  Plaintiff and the Class Members purchased Optic White because they were deceived into believing that Optic White goes beyond surface stains to deeply whiten teeth.  As a result, Plaintiff and the Class Members purchased Optic White and have been injured in fact because Optic White was not effective for deep whitening or whitening intrinsic stains.  Plaintiff and the Class Members have suffered an ascertainable and out-of-pocket loss.  Plaintiff and the Class Members seek a refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

6.     Plaintiff Willis seeks relief in this action individually and on behalf of all persons in California, who, within the relevant statute of limitations period, purchased Optic White on or after October 1, 2013, or who purchased Optic White Platinum on or after February 1, 2014.  Specifically, Plaintiff brings claims for violation of Civil Code §§ 1750, *et seq.*, the California Consumers Legal Remedies Act ("CLRA"), Bus. & Prof. Code §§ 17200, *et seq.*, California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17500, *et seq.*, California's False Advertising Law ("FAL"), and for breach of express warranty.

## THE PARTIES

7.     Plaintiff Sharon Willis is a natural person and a citizen of Nevada.  She was a resident of California at the time she purchased Optic White.  In or about

---

CLASS ACTION COMPLAINT                                                                 2

2017, Ms. Willis purchased Optic White toothpaste at a Wal-Mart retail store in Corona, California.  Ms. Willis purchased Optic White based on claims on Optic White's label, including, but not limited to, claims that that the toothpaste would "Deeply Whiten" teeth, and that it "Goes Beyond Surface Stain Removal To Deeply Whiten." She relied on these representations and warranties in deciding to purchase the Optic White toothpaste.  Accordingly, these representations and warranties were part of the basis of the bargain, in that Ms. Willis attributed value to these promises and would not have purchased Optic White toothpaste or would have paid a substantially reduced price for Optic White toothpaste had she known that these representations and warranties were false and misleading.  Although she purchased and used Optic White as directed, Optic White did not deeply whiten her teeth, or affect any of the intrinsic stains on her teeth.  However, Ms. Willis remains interested in purchasing a toothpaste that would deeply whiten her teeth and would consider Optic White if it worked as advertised.

8.     Defendant Colgate Palmolive Co. is a Delaware corporation with its principal place of business at 300 Park Avenue, New York, New York 10022. Colgate Palmolive Co. is engaged in the business of manufacturing, mass marketing, and distributing Optic White toothpaste throughout the United States.

**JURISDICTION AND VENUE**

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from at least one Defendant.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business throughout this District, Plaintiff Willis purchased Optic White in this District, and Optic White is sold extensively in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

A.     **Colgate Optic White's False and Misleading Labels and Advertising**

11.     Colgate falsely claims on Optic White toothpaste product labels that the products intrinsically whiten teeth.  The claim is made on the product packaging of each Optic White toothpaste product, including but not to Optic White toothpaste, Optic White Advanced toothpaste, Optic White Platinum toothpaste, Optic White Radiant toothpaste, and Optic White High Impact toothpaste.

12.     Colgate uses several variations of the claim designed to lead consumers to believe that product if capable of intrinsically whitening teeth, including the following:

- "Goes Beyond Surface Stain Removal unlike ordinary toothpastes";
- "Goes Beyond Surface Stain Removal To Deeply Whiten";
- "Deeply Whitens More Than 3 Shades";
- "With Hydrogen Peroxide to Deeply Whiten";
- "With Hydrogen Peroxide For Deep Set Stain Removal";
- "Designed to Whiten Inside and Out with Hydrogen Peroxide[.]"

13.     In fact, Optic White toothpaste does not and cannot go beyond surface stain removal, does not and cannot deeply white teeth, and does not and cannot whiten both inside and out because peroxide in toothpaste does not function as a whitening agent on intrinsic stains.  Instead, Optic White only reaches surface stains (created on the surface of teeth by substances like wine, coffee, or tobacco) by abrading the surface of teeth.  Thus, Defendant's "deeply whitens" representations on Optic White's labels are false and misleading.

1
2
3
4
5



6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

14.     Defendant makes the same "deeply whitens" misrepresentations in television commercials.  For example, one commercial begins with the tagline "How much whiter can your smile be?"  So that consumers can find out how much whiter their smile can be, Defendant "Introduc[es] new Colgate Optic White Whitening Protect Toothpaste."  To illustrate Optic White's supposedly deep whitening capabilities, as shown below, Defendant uses a dramatization of a shell dipped in wine that "is made of calcium that can absorb stains like teeth."

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16

15.    The commercial goes on to explain, "Brush one side with regular whitening toothpaste and the other side with Optic White.  It whitens deeper."  To emphasize the commercial's message that Optic White works by whitening intrinsic stains, beneath the shell illustration, Defendant underscores that "Colgate Optic White can penetrate to work below the tooth's surface."

17
18
19
20
21
22
23
24
25
26



27
28

CLASS ACTION COMPLAINT                                                                6

16.     Because toothpaste only reaches surface stains, Defendant's shell commercial is false and misleading.

17.     Defendant highlights the same "deeply whitens" message in another commercial featuring a series of smiling women adorning themselves with sunglasses, small purses, hats and other accessories while brushing with Optic White toothpaste.  The commercial begins "Now your best accessory can be your smile with Colgate Optic White Toothpaste."



18.     While depicting sparkly Optic White particles reaching below surface stains to whiten teeth (shown below), the commercial continues, "Unlike the leading whitening toothpaste, Colgate Optic White toothpaste goes beyond surface stains to deeply whiten teeth."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21    19.    Like Defendant's labeling and shell commercial, Defendant's
22 accessories commercial conveys the false and misleading message that Optic White
23 deeply whitens teeth by acting as a whitening agent on intrinsic stains.
24
25
26
27
28

CLASS ACTION COMPLAINT                                              8

20.     In its print advertising materials and on its website, Colgate reinforces the deeply whitens message by claiming that "Unlike other whitening toothpastes, Radiant™ whitens teeth both inside and out.  It removes deep set teeth stains below the tooth's surface for a Radiant™ whiter smile."  *See e.g.*, https://www.colgate.com/en-us/products/toothpaste/ow-radiant (last visited September 4, 2019).  *See also* Optic White Radiant™ website graphic below ("Whitens teeth both Inside and Out.").



**B.     Colgate Optic White Toothpaste Does Not "Deeply Whiten" Teeth**

21.     Defendant's representations that Optic White toothpaste "Deeply Whitens," "Goes Beyond Surface Stain Removal To Deeply Whiten," and that "Optic White toothpaste is clinically proven to whiten teeth with peroxide ...  [i]t goes beyond surface stains unlike ordinary toothpastes" are false and misleading because peroxide in toothpaste does not go beyond surface stains or deeply whiten teeth.  In fact, dentists agree that peroxide in toothpaste does not work on intrinsic

stains because the amount of peroxide in toothpaste is too small and gets rinsed away before it can deeply whiten teeth.

22.     As Dr. William DeVizio, DMD, then Vice-President for Dental Clinical Research at Colgate-Palmolive, explained on behalf of Defendant:

> **Whitening toothpastes have some disadvantages.  They don't actually whiten your teeth.  Instead, they contain an abrasive that grinds away stains on the enamel, making your teeth seem brighter.  When used for a long time, the abrasive can remove so much enamel that your teeth can get stained even more easily.  In addition, using abrasive whitening toothpastes can dull veneers and crowns.  <u>Toothpastes with hydrogen peroxide for whitening don't really help much.  Because the toothpaste gets all over your mouth, including your gums, and because you might swallow some, the amount of hydrogen peroxide is small.  In addition, you probably won't brush long enough for the hydrogen peroxide to have much of an effect.</u>**[1]

23.     Dr. Vincent Mayher, dentist and the past president of the Academy of General Dentistry, similarly emphasized:

> There's no doubt that whitening toothpastes can clean stains off teeth and give them a little extra gleam.  But the term "whitening" is misleading.  **Unlike trays and strips that can bleach deep within a tooth** … **toothpastes can reach only the surface … bleaches in toothpastes are useless because they'll get rinsed away before they do anything.**[2]

---

[1] *What are the disadvantages of using whitening toothpaste?*, Teeth Whitening, Sharecare (July 27, 2011). Prior to the filing of *Dean, et al. v. Colgate-Palmolive Co*., 15-cv-00107 (C.D. Cal.), the first Optic White lawsuit filed in 2015, this statement was attributed to Dr. DiVizio.  After the *Dean* action was filed, the online attribution to Dr. DiVizio was removed, but the statement remains on Sharecare's website, available at https://www.sharecare.com/health/teeth-whitening/disadvantages-of-using-whitening-toothpaste (last visited September 4, 2019).

[2] *See* Woolston, Chris, *Are Whitening Toothpastes a Bright Idea?*, The Healthy Skeptic, Los Angeles Times (July 4, 2011) (*available at* http://articles.latimes.com/2011/jul/04/health/la-he-skeptic-whitening-toothpaste-20110704) (last visited September 4, 2019).

---

CLASS ACTION COMPLAINT                                                          10

24.     Yet another dentist, Dr. Mark Burhenne, DDS explains "How Toothpaste Packaging Messes With Your Mind" as follows:

> The newer whitening toothpastes whiten your teeth chemically with a hydrogen peroxide-based chemical.  **These toothpastes contain the right chemical for whitening, but you're never going to get the results with only two, or even five minutes of brushing.**
>
> **Proper whitening requires you to hold the peroxide up against the tooth for several hours or more.**  You can think of the second type of whitening toothpaste like sandpaper – the increased abrasiveness in whitening toothpaste helps to polish and remove surface staining.  This is effective for removing surface staining from coffee, tea, and berries.
>
> **Be aware that you are only removing stains, not changing the intrinsic color of your teeth.**
>
> I don't recommend these toothpastes because they remove tooth structure by scraping away dentin and enamel.[3]

25.     Likewise, the material for a continuing education course, implemented in accordance with the standards of the Academy of General Dentistry Program, teaches that:

> **Toothpastes with hydrogen peroxide are not very effective** because the peroxide reacts with other substances on the teeth.  The effectiveness is also dependent on the duration of time peroxide is on the teeth.  The longer it is in contact with the tooth surface, the better it works.  **Since brushing is usually done quickly, peroxide does not have much time to work properly.**[4]

//

//

//

//

---

[3] Burhenne, Mark, *How Toothpaste Packaging Messes Fools Us*, Ask the Dentist (Oct. 15, 2014) (*available at* http://askthedentist.com/toothpaste-marketing/) (last visited September 4, 2019, 2018).

[4] Dynamic Dental Educators, *Teeth Whitening*, ADA Continuing Education Recognition Program (May 1, 2014).

26.     Dr. Joe Oliver at London's Welbeck Clinic also explained his skepticism about the efficacy of the small amount of peroxide (0.1%) in toothpaste:

> Unless a peroxide toothpaste is left in contact with teeth for 30 minutes it's probably not going to have an effect.[5]

27.     Richard Bebermeyer, DDS, MBA and retired professor and former chairman of restorative dentistry and biomaterials at The University of Texas Health Science Center at Houston (UTHealth) School of Dentistry also agrees that intrinsic staining cannot be achieved with toothpaste.[6]

28.     Donna Warren-Morris, a registered dental hygienist and professor at the University of Texas School of Dentistry agrees and adds that "to whiten or bleach the teeth to any significant degree, the hydrogen or carbamide peroxide concentration has to be much higher than can be found in whitening toothpastes."[7] Another registered dental hygienist, Kristina Kucinskaite, also commented that whitening toothpaste with peroxide is not in contact with the enamel surface of teeth for long enough and had too little peroxide because "[r]eal whitening needs peroxide and time."

29.     Colgate's competitor, Procter & Gamble ("P&G"), explained Optic White's inability to deeply whiten teeth as follows:

> To enable peroxide to intrinsically whiten teeth, it must be (1) held in sustained contact with the tooth surface for an extended period of time and be (2) protected from saliva.  As Colgate itself acknowledges, saliva contains a high level of the enzyme catalase, which rapidly converts peroxide into gaseous oxygen and water, even as salivary

---

[5] Coleman, Claire, *Is whitening toothpaste just a waste of money?*, Daily Mail, (Jan. 20, 2013 (*available at* http://www.dailymail.co.uk/femail/article-2265539/Is-whitening-toothpaste-just-waste-money-They-promise-dazzling-Hollywood-smile-investigation-reveals-products-barely-make-difference.html) (last visited September 4, 2019).

[6] Webb, Camille, *The Toothpaste Trance*, UT Dentists (Oct. 8, 2014) (*available at* https://www.utdentists.com/news/story.htm?id=c8822c6a-75bb-4e4e-af4a-a77ebbc0e071)(last visited June 22, 2018).

[7] *Id.*

---

flows wash away the peroxide.  These decomposition and dilution effects are well documented in peer review literature and have been publicly accepted by Colgate's scientists and engineers.  Clinical research has also proven the point.  ….

Optic White has a very low concentration of peroxide, remains in the vicinity of the tooth surface for a very short period of time (typically, 2 minutes or less per brushing), over time provides much less aggregate exposure of peroxide to the tooth surface (whitening efficiency), and lacks a barrier to protect against the effects of saliva.

30.    In a patent application for a non-toothpaste whitening product, Colgate, like P&G,  explained that "saliva, contains high concentrations of the enzyme catalase, which on contact, rapidly decomposes the peroxide" and that "the low viscosities of aqueous peroxide solutions do not allow the peroxide whitening agent to remain in contact with the teeth for as long as is necessary to effect substantive whitening because of the constant flushing effects of salivary secretions."

31.    P&G also conducted clinical studies to evaluate the intrinsic whitening performance of Optic White.  Those study results showed that Optic White did not provide an intrinsic whitening benefit.  For example, one study found that: "After 1 and 4 weeks of product use, neither [Crest Cavity Protection nor Optic White] demonstrated improvement in tooth color relative to Baseline."[8]  Another study showed that "use of [Optic White] whitening paste did not demonstrate significant changes."[9]  Yet another study concluded that: "After 1 week of use, the whitening toothpaste [Optic White] did not demonstrate significant improvement of yellowness and lightness color parameters."[10]  Similarly, in a study that compared Optic White to whitening strips, Optic White did not have statistically significant mean color

_____

[8] Cronin M, *Effects of H202 Containing Whitening Dentifrice on Post-prophylaxis Tooth Color* (2013).

[9] Garcia-Godoy, *2-Week Comparative Efficacy of Whitening Strips and Whitening Paste* (2013).

[10] Biesbrock A.R., *Short-Term Efficacy of Marketed Whitening Toothpaste Relative to Negative Control* (2013).

CLASS ACTION COMPLAINT                                                             13

improvement for yellow or lightness color parameters at both one week and four week study visits.[11]

32.    Moreover, additional scientific research shows that the whitening effect of hydrogen peroxide in toothpaste is not clinically significant.  As researchers summarized in the Brazilian Dental Journal: "In vitro studies show that brushing with toothpaste containing bleaching products do not promote significant results in discolored teeth compared to conventional dentifrices [toothpastes], concluding that these dentifrices, due to their mechanical action (abrasion) and the increase of high-performance abrasives as hydrated silica, act just at removing pigmentation, giving a false sense of whitening."[12]

33.    In another example, in the Brazilian Oral Research Journal, researchers explained that the whitening effect obtained from whitening toothpastes is not clinically significant because a "study that compared the efficacy and safety of three OTC bleaching products (1% hydrogen peroxide dentifrice [toothpaste], 18% carbamide peroxide paint-on gel, and 5% carbamide tray system) showed that … **the paint-on gel and dentifrice [toothpaste] groups did not result in significant color improvements from baseline**."[13]

34.    Optic White only makes teeth appear whiter because it contains an abrasive that grinds away stains on the enamel.  Using abrasive whitening toothpaste can remove enamel and expose the yellowish dentin beneath the surface, which can cause teeth to stain more easily.  Indeed, Optic White received a Relative Dentin

---

[11] Farrell S., *Whitening Efficacy of 9.5% H202 Strips and 1% H202 Paste* (2013).

[12] Horn, Bruna Andrade, *Clinical Evaluation of the Whitening Effect of Over-the-Counter Dentifrices on Vital Teeth*, Braz. Dent. J. Vol. 25 No. 3 (2014).

[13] Demarco, Flavio, *Over-the-counter whitening agents: a concise review*, Braz. Oral Res. Vol. 23 Supl.1 (2009).

Abrasion (RDA) score of 100, and is considered *highly* abrasive, or even more abrasive than the majority of whitening toothpastes.[14]

**C.    The National Advertising Division Concluded That Defendant Misled Consumers by Claiming That Colgate Optic White Deeply Whitens Teeth**

35.    In 2012, the National Advertising Division of the Council of Better Business Bureaus ("NAD") found that Defendant did not have sufficient evidence to support the message that hydrogen peroxide as contained in Optic White functions as a significant whitening agent on intrinsic stains.  Specifically, the NAD cautioned that Colgate should avoid conveying the message that whitening improvement from Optic White toothpaste is attributable to the peroxide contained in Optic White. Accordingly, the NAD recommended that Defendant discontinue claims suggesting that hydrogen peroxide in toothpaste deeply whitens and whitens below surface stains.  Defendant, however, refused to change its advertising and continues to make claims about the intrinsic whitening capabilities of Optic White.[15]

36.    In 2014, the NAD again conducted a compliance inquiry because, in the latest advertising for Optic White toothpaste, Defendant's Optic White packaging claims that Optic White toothpaste, "Goes Beyond Surface Stain Removal to Deeply Whiten," that "This Unique Formula is Clinically Proven to Whiten Teeth With Peroxide," and that Optic White "Goes Beyond Surface Stains Unlike Ordinary Toothpastes." [16]

---

[14] Sorin, Robert, *Toothbrush Abrasion* (*available at* https://nycdmd.com/uncategorized/toothpaste-abrasion/)(last visited September 4, 2019).

[15] *NAD Recommends Colgate Discontinue Certain Claims for Optic White Toothpaste*, Advertising Self-Regulation Council (Aug. 14, 2012) (*available at* http://www.asrcreviews.org/nad-recommends-colgate-discontinue-certain-claims-for-optic-white-toothpaste-following-pg-challenge/) (last visited September 4, 2019).

[16] *NAD Refers Advertising from Colgate to FTC for Further Review*, Advertising Self-Regulation Council (July 16, 2014) (*available* http://www.asrcreviews.org/nad-

---

CLASS ACTION COMPLAINT                                                                 15

37.     In response to the NAD's compliance inquiry, Defendant claimed that Optic White had been "reformulated" and that new evidence supported the claims made for the "reformulated" Optic White's intrinsic whitening capabilities.  The NAD disagreed because the amount of peroxide in Optic White had not changed.  In particular, the NAD observed "[t]hat changes to the reformulated product are of little consequence with respect to the advertiser's claims of Optic White's ability to provide whitening benefits below the tooth surface."  Further, the NAD found that the claim challenged in the 2014 compliance proceeding was not markedly different from the claim that it recommended be discontinued in 2012.  Thus, the NAD found "that the claim 'whitens deeper' and related claims contravene NAD's earlier decision and recommendations and recommended that the company modify its broadcast advertising to remove the word 'deeper' and to avoid any implication that the Optic White product intrinsically whitens teeth."  Defendant again refused to bring its advertising into compliance with the NAD's decision and recommendations.[17]

## **TOLLING OF THE STATUTE OF LIMITATIONS**

38.     Plaintiff was a member of the putative nationwide class in *Dean v. Colgate-Palmolive Co.*, Case No. 5:15-cv-00107-JGB, filed January 16, 2015 in the United States District Court for the Central District of California.

39.     Due to the filing of the *Dean* case, the statute of limitations for the claims asserted herein has been tolled since at least January 16, 2015.  *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553-54 (1974) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.").

_____

*refers-advertising-from-colgate-to-ftc-for-further-review*) (last visited September 4, 2019).

[17] *Id.*

---

CLASS ACTION COMPLAINT                                                16

40.     On April 29, 2016, the plaintiffs *Dean* filed their motion for class certification, which sought to certify a class defined as: "All persons in California [and other states] who purchased Optic White on or after October 1, 2013, or who purchased Optic White Platinum on or after February 1, 2014."

41.     Plaintiff was a prospective absent class member of the proposed class in the *Dean* case.  Class certification was denied in the *Dean* case in March 2018. The *Dean* court noted that the plaintiffs satisfied all criteria for class certification, but the assertion of a multi-jurisdiction class precluded class certification.  A motion for reconsideration of the class certification decision was denied on May 11, 2018.

42.     Plaintiffs in the *Dean* case appealed the decision to the Ninth Circuit Court of Appeals.  On June 24, 2019, the Ninth Circuit affirmed the decision in the *Dean* case denying class certification.

43.     The statute of limitations for the claims of Plaintiff in this case and the claims of the prospective class members are tolled from the commencement of the *Dean* case until at least the date of the Ninth Circuit's order affirming the class certification decision in that case.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a class consisting of all persons in California, within the relevant statute of limitations period, purchased Optic White on or after October 1, 2013, or who purchased Optic White Platinum on or after February 1, 2014 (the "Class").

45.     Excluded from the Class are Defendant, the officers and directors of Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

46.     Also excluded from the Class are persons or entities that purchased Optic White for purposes of resale.

47.     Plaintiff is a member of the Class she seeks to represent.

48.     The Class is so numerous that joinder of all members is impractical. Although Plaintiff does not yet know the exact size of the Class, Optic White is sold in major retail stores in California, including stores such as CVS, Target, and Walgreens.  Major online retailers include Amazon.com and Drugstore.com.  Upon information and belief, the Class includes hundreds of thousands of members.

49.     The Class is ascertainable because the Class Members can be identified by objective criteria – the purchase of Optic White toothpaste during the Class Period.  Individual notice can be provided to Class Members "who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

50.     There are numerous questions of law and fact common to the Class Members that predominate over any individual actions or issues, including but not limited to:

1.     Whether Defendant breached an express warranty made to Plaintiff and the Class;

2.     Whether Defendant's marketing of Optic White is false, misleading, and/or deceptive;

3.     Whether Defendant's marketing of Optic White is an unfair business practice;

4.     Whether Optic White goes beyond surface stains to deeply whiten teeth;

5.     Whether Optic White is clinically proven to whiten with peroxide and to go beyond surface stains to deeply whiten teeth;

6.     Whether Defendant violated California's CLRA;

7.     Whether Defendant violated California's UCL;

8.     Whether Defendant violated California's FAL;

9.     Whether Class Members suffered an ascertainable loss as a result of Defendant's misrepresentations; and

10.    Whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and the Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

51.    Plaintiff's claims are typical of the claims of the Class Members as all of them are similarly affected by Defendant's wrongful conduct.  Plaintiff has no interests antagonistic to the interests of the other Class Members.  Plaintiff and all Class Members have sustained economic injury arising out of Defendant's violations of common and statutory law as alleged herein.

52.    Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the Class Members, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

53.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single

court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

## COUNT I

### (Breach of Express Warranty)

54.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

55.     Plaintiff brings this Count individually and on behalf of the Class.

56.     In connection with the sale of Optic White, Defendant issued express warranties including that Optic White would go beyond surface stains to deeply whiten teeth, that Optic White is clinically proven to whiten teeth with peroxide and to go beyond surface stain removal to deeply whiten teeth, and that Optic White penetrates to work below the tooth's surface.  Defendant expressly warranted that Optic White was effective and would whiten intrinsic stains below the tooth's surface.

57.     Defendant's affirmations of fact and promises made to Plaintiff and the Class on Optic White labels and in television commercials, became part of the basis of the bargain between Defendant on the one hand, and Plaintiff and the Class Members on the other, thereby creating express warranties that Optic White would conform to Defendant's affirmations of fact, representations, promises, and descriptions.

58.     Defendant breached its express warranties because Optic White does not in fact deeply whiten teeth, does not go beyond surface stain removal, and is not clinically proven to whiten with peroxide below the tooth's surface.  In short, Optic White does not perform as expressly warranted.

59.     Plaintiff and the Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Optic White if they had known the true facts; (b) they paid for Optic White due to the

mislabeling; and (c) Optic White did not have the quality, effectiveness, or value as promised. As a result, Plaintiff and the Class have been damaged by the difference in value between Optic White as advertised and Optic White as actually sold.

## COUNT II

### (Consumers Legal Remedies Act, Civil Code §§ 1750, *et. seq.*)

### (Injunctive Relief Only)

60.     Plaintiff brings this Count individually and on behalf of the Class.

61.     Plaintiff and the Class Members are consumers who purchased Optic White for personal, family, or household purposes. Accordingly, Plaintiff and the Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff and the Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of Optic White.

62.     At all relevant times, Optic White constituted a "good" as that term is defined in Cal. Civ. Code § 1761(a).

63.     At all relevant times, Defendant was a "person" as that term is defined in Civ. Code § 1761(c).

64.     At all relevant times, Plaintiff's purchases of Optic White, and the purchases of Optic White by other Class Members, constituted "transactions" as that term is defined in Cal. Civ. Code § 1761(e).

65.     Defendant's actions, representations, and conduct has violated, and continues to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in the sale of Optic White to consumers.

66.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Optic White to Plaintiff and the Class. Defendant's practices, acts, policies, and course of conduct violated the CLRA §1750 *et seq.* as described above.

67.    Defendant represented that Optic White had sponsorship, approval, characteristics, uses, and benefits which it did not have in violation of Cal. Civ. Code § 1770(a)(5).

68.    Defendant represented that Optic White was of a particular standard, quality, and grade, when it was another, in violation of California Civil Code § 1770(a)(7).

69.    Defendant violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that Optic White was effective at deeply whitening teeth, and effective at going beyond surface stain removal to deeply whiten teeth when, in fact, it was not.

70.    Defendant represented that Optic White was of a particular standard or quality when Defendant was aware that they were of another in violation of § 1770(a)(7) of the CLRA.  Defendant represented that Optic White deeply whitens teeth, and that it was clinically proven to whiten and go beyond surface stain removal when Optic White does not deeply whiten and does not go beyond surface stain removal.

71.    Defendant advertised Optic White with the intent not to sell it as advertised in violation of § 1770(a)(9) of the CLRA.  Defendant did not intend to sell Optic White as advertised because Defendant knew that peroxide in toothpaste is not effective at deeply whitening teeth, or at removing intrinsic stains in teeth.

72.    Plaintiff and the Class Members suffered injuries caused by Defendant's misrepresentations because: (a) Plaintiff and the Class Members would not have purchased Optic White if they had known the true facts; (b) Plaintiff and the Class paid an increased price for Optic White due to the mislabeling of Optic White; and (c) Optic White did not have the level of quality, effectiveness, or value as promised.

73.    Prior to the filing of this Complaint, a CLRA notice letter from Plaintiff was served on Defendant which complies in all respects with California Civil Code §

1782(a).  A true and correct copy of Plaintiff's letter is attached as Exhibit A.  The letter was sent to Defendant via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770.  Defendant was further advised that in the event that the relief requested had not been provided within thirty (30) days, Plaintiff would amend the Complaint to seek damages pursuant to the CLRA.

74.    Wherefore, Plaintiff seeks injunctive relief for these violations of the CLRA.

## COUNT III

**(False Advertising Law, Business & Professions Code §§17500 *et seq.*)**

75.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

76.    Plaintiff brings this Count on behalf of the Class.

77.    California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

78.    Throughout the Class Period, Defendant committed acts of false advertising, as defined by the FAL, by using false and misleading statements to promote the sale of Optic White, as described above, and including, but not limited to, representing that Optic White deeply whitens teeth, that Optic White is clinically

proven to whiten and go beyond surface stain removal to deeply whiten teeth, and that Optic White whitens intrinsic stains.

79.     Defendant knew or should have known, through the exercise of reasonable care, that their statements were untrue and misleading.

80.     Defendant's actions in violation of the FAL were false and misleading such that the general public was deceived and is likely to continue being deceived.

81.     As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and the Class Members have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and the Class would not have purchased Optic White if they had known the true facts regarding the effectiveness of Optic White; (b) Plaintiff and the Class paid an increased price due to the misrepresentations about Optic White; and (c) Optic White did not have the promised quality, effectiveness, or value.

82.     Plaintiff brings this claim pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective disclosures to consumers.  Plaintiff and the Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT IV

### (The "Unlawful Prong" of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)

83.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

84.     Plaintiff brings this Count on behalf of the Class.

85.    The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL also provides for injunctive relief and restitution for UCL violations.

86.     "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

87.    Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for an UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

88.    Defendant violated the "unlawful prong" by violating the CLRA, and the FAL, as well as by breaching express and implied warranties as described herein.

89.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "unlawful prong" violation because: (a) Plaintiff and the Class would not have purchased Optic White if they had known the true facts regarding the effectiveness and contents of Optic White; (b) Plaintiff and the Class paid an increased price due to the misrepresentations about Optic White; and (c) Optic White did not have the promised quality, effectiveness, or value.

90.    Pursuant to Bus. & Prof. Code §17203, Plaintiff and the Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law;

and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT V

### (The "Fraudulent Prong" of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)

91.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

92.    Plaintiff brings this Count on behalf of the Class.

93.    The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

94.    Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL because Defendant represented that Optic White deeply whitens teeth, and goes beyond surface stain removal to deeply whiten teeth when, in fact, it does not.  As described above, Defendant misrepresented that Optic White deeply whitens and that it is clinically proven to whiten teeth with peroxide and to go beyond surface stains.

95.    Plaintiff and the Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of Optic White, and they acted reasonably when they purchased Optic White based on their belief that Defendant's representations were true.

96.    Defendant knew or should have known, through the exercise of reasonable care, that their representations about Optic White were untrue and misleading.

97.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "fraudulent prong" violation

because: (a) Plaintiff and the Class would not have purchased Optic White if they had known the true facts regarding the effectiveness of Optic White; (b) Plaintiff and the Class paid an increased price due to the misrepresentations about Optic White; and (c) Optic White did not have the promised quality, effectiveness, or value.

98.     Pursuant to Bus. & Prof. Code §17203, Plaintiff and the Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

## COUNT VI

### (The "Unfair Prong" of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)

99.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

100.   Plaintiff brings this Count on behalf of the Class.

101.   The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

102.   Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiff and the Class arising from Defendant's conduct outweighs the utility, if any, of those practices.

103.   Defendant's practices as described herein are of no benefit to consumers who are tricked into believing that Optic White will deeply whiten teeth, that Optic

White will whiten intrinsic stains, and that Optic White is clinically proven to whiten with peroxide to go beyond surface stain removal.  Defendant's practice of injecting misinformation into the marketplace about the capabilities of toothpaste is unethical and unscrupulous, especially because consumers trust companies like Defendant to provide accurate information about dental care.  Taking advantage of that trust, Defendant misrepresents the effectiveness of Optic White to sell more toothpaste. Consumers believe that Defendant is an authority on the effectiveness and quality of toothpaste for dental care and therefore believe Defendant's representations that toothpaste can magically penetrate the tooth's surface when in fact Optic White's abrasive properties wear off the outer layer of teeth, exposing the yellowish under layer.  Defendant's practices are also substantially injurious to consumers because, among other reasons, consumers pay for toothpaste that purportedly deeply whitens teeth, while in fact, they are unknowingly rubbing off the surface layer of their teeth exposing dentin.

104.   As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and the Class Members have suffered injury and actual out-of-pocket losses as a result of Defendant's UCL "unfair prong" violation because: (a) Plaintiff and the Class would not have purchased Optic White if they had known the true facts regarding the effectiveness and contents of Optic White; (b) Plaintiff and the Class paid an increased price due to the misrepresentations about Optic White; and (c) Optic White did not have the promised quality, effectiveness, or value.

105.   Pursuant to Bus. & Prof. Code §17203, Plaintiff and the Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of their deceptive practices; (c) interest at the highest rate allowable by law;

1   and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*,

2   California Code of Civil Procedure §1021.5.

3       **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

4       A.    For an order certifying the Class of consumers who purchased Optic

5   White;

6       B.    For an order declaring that Defendant's conduct violates the statutes

7   referenced herein;

8       C.    Awarding compensatory, statutory, and punitive damages in favor of

9   Plaintiff and the Class Members against Defendant for all damages sustained as a

10  result of Defendant's wrongdoing, in an amount to be proven at trial, including

11  interest thereon;

12      D.    Awarding injunctive relief against Defendant to prevent Defendant

13  from continuing their ongoing unfair, unconscionable, and/or deceptive acts and

14  practices;

15      E.    For an order of restitution and/or disgorgement and all other forms of

16  equitable monetary relief;

17      F.    Awarding Plaintiff and the Class Members their reasonable costs and

18  expenses incurred in this action, including counsel fees and expert fees; and

19      G.    Awarding such other and further relief as the Court may deem just and

20  proper.

21                        **JURY DEMAND**

22      Plaintiff hereby demands a trial by jury on all claims so triable in this action.

23

24  Dated:  October 3, 2019        **BURSOR & FISHER, P.A.**

25

                           By:    */s/ L. Timothy Fisher*

26

27                           L. Timothy Fisher (SBN 191626)
                         Blair Reed (SBN 316791)

28                           1990 North California Blvd., Suite 940

Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
            breed@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (SBN 276006)
2665 Bayshore Drive, Suite 220
Miami, FL 33133
Telephone: (212) 989-9113
E-Mail: scott@bursor.com

**THE MARLBOROUGH LAW FIRM, P.C.**
Christopher Marlborough (SBN 298219)
445 Broad Hollow Road, Suite 400
Melville, New York 11747
Telephone: (212) 991-8960
Facsimile: (212) 991-8952
Email**:** chris@marlboroughlawfirm.com

**LEVY & KORSINSKY, LLP**
Rosemary Rivas (SBN 209147)
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 373-1671
Facsimile: (415) 484-1294
Email**:** rrivas@zlk.com

*Counsel for Plaintiff*

1

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

2

I, L. Timothy Fisher, declare as follows:

3

1.      I am an attorney at law licensed to practice in the State of California and

4

a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel

5

of record for Plaintiff in this action.  I have personal knowledge of the facts set forth

6

in this declaration and, if called as a witness, I could and would competently testify

7

thereto under oath.

8

2.      The Complaint filed in this action is filed in the proper place for trial

9

under Civil Code Section 1780(d) in that a substantial portion of the events alleged

10

in the Complaint occurred in the Central District of California.

11

I declare under the penalty of perjury under the laws of the State of California

12

and the United States that the foregoing is true and correct and that this declaration

13

was executed at Walnut Creek, California this 3rd day of October, 2019.

14

15

_____*/s/ L. Timothy Fisher*_____

16

L. Timothy Fisher

17

18

19

20

21

22

23

24

25

26

27

28

CLRA VENUE DECLARATION

**EXHIBIT A**

# BURSOR & FISHER
#### P.A.

1990 N. California Blvd.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

L. TIMOTHY FISHER
Tel: 925.300.4455
Fax: 925.407.2700
ltfisher@bursor.com

October 2, 2019

*Via Certified Mail - Return Receipt Requested*

Colgate-Palmolive Co.
300 Park Avenue
New York, New York 10022

Re:   *Demand Letter Pursuant to California Civil Code § 1782,*
      *Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq., and other applicable laws.*

To Whom It May Concern:

      This letter serves as a notice and demand for corrective action on behalf of my client, Sharon Willis, and all other persons similarly situated, arising from violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9).  This letter also serves as notice pursuant to Cal. Com. Code § 2607(3)(a) concerning the breaches of express and implied warranties described herein.

      You have participated in the manufacture, marketing, and sale of Colgate Optic White toothpaste.  On the labels, in commercials, and online, you misrepresent that Colgate Optic White toothpaste "Goes Beyond Surface Stain Removal To Deeply Whiten," "Deeply Whitens," and "goes beyond surface stains."  In fact, Colgate Optic White toothpaste only reaches surface stains by abrading teeth.  Indeed, with a Relative Dentin Abrasion (RDA) score of 100, Colgate Optic White is considered highly abrasive.  Further, authorities on dental care agree that peroxide in toothpaste is useless because it gets rinsed away before it does anything.  Thus, Colgate Optic White does not "deeply whiten," or "[go] beyond surface stain removal" because it does not function as a whitening agent on intrinsic stains.

      Ms. Willis purchased Colgate Optic White based on the "deeply" whitening claims on the product label and in television commercials.  She would not have purchased Colgate Optic White if the label had not stated that it would deeply whiten her teeth.  Colgate Optic White has not deeply whitened her teeth, or affected any of the intrinsic stains on her teeth.

      To cure the defects described above, we demand that you (1) cease and desist from continuing to mislabel Colgate Optic White toothpaste; (2) issue an immediate recall on any Colgate Optic White toothpaste products bearing false and misleading labels; and (3) make full

BURSOR&FISHER
P.A.

restitution to all purchasers of Colgate Optic White toothpaste of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the ingredients, formula, and manufacturing process for Colgate Optic White toothpaste;

2. All communications with the U.S. Food and Drug Administration concerning the product development, manufacturing, marketing and sales of Colgate Optic White toothpaste;

3. All communications with the National Advertising Division concerning the product development, manufacturing, marketing and sales of Colgate Optic White toothpaste

4. All documents concerning the advertisement, marketing, or sale of Colgate Optic White toothpaste; and

5. All communications with customers concerning complaints or comments concerning Colgate Optic White toothpaste.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation. If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

L. Timothy Fisher